IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No. 20-206** (FAB)

ALDO PIMENTEL-RAMÍREZ,

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

Defendant Aldo Pimentel-Ramírez ("Pimentel) moves to dismiss the indictment pursuant to the Speedy Trial Act ("STA"), 18 U.S.C. section 3161(b).  (Docket Nos. 27 & 49.)[1]  For the reasons set forth below, Pimentel's motion to dismiss is **DENIED**.

I.  **Background**

The facts appurtenant to the motion to dismiss predate the commencement of this action.  On November 18, 2019, a grand jury returned an indictment charging Pimentel with bulk cash smuggling into or out of the United States in violation of 31 U.S.C. section 5332 (count one), attempting to structure the importation and exportation of monetary instruments in violation of 31 U.S.C. section 5324(c)(3) (count two), and making a false statement to a

---

[1] Pimentel filed a supplemental motion to dismiss.  (Docket No. 49.)  The original and supplemental motions are referred to in the singular form.  (Docket Nos. 27 & 47.)

department or agency of the United States in violation of 18 U.S.C.
section 1001(a)(2) (count three) (hereinafter, the "2019 case").
Case No. 19-744 (RAM), Docket No. 10.   The United States
Immigration and Customs Enforcement ("ICE") issued a "prosecution
detainer" to "regain custody of [Pimentel]" after the conclusion
of the 2019 case.  (Docket No. 51 at p. 2.)

Subsequently, Pimentel entered a straight plea of guilty.
Id., Docket No. 44.  On May 12, 2020, the Court imposed a sentence
of time served and one year of supervised release.  Id., Docket
No. 69.   ICE then transferred Pimentel to the Jackson Parish
Correctional Center ("JPCC") in Jonesboro, Louisiana, "where he
remained detained pending his deportation to the Dominican
Republic."  Case No. 20-206 (FAB), Docket No. 27 at p. 2.

Two months after Pimentel arrived at JPCC, a grand jury
charged him with conspiracy to possess with intent to distribute
controlled substances in violation of 21 U.S.C. sections 841(a)(1)
and 846 (count one), and conspiracy to distribute a controlled
substance for the purpose of unlawful importation in violation of
21 U.S.C. section 952, 960 and 963 (count two).  (Docket No. 2.)
Magistrate Judge Marcos E. López issued a warrant for Pimentel's
arrest on July 1, 2020.  (Docket No. 4.)

On July 13, 2020, the United States requested a writ of *habeas
corpus ad prosequendum*. (Docket No. 5.)   The Court granted this

request on July 20, 2020, ordering ICE, the warden of JCPP, and the United States Marshals Service ("USMS") to "have the body of Aldo Pimentel Ramírez . . . before this Court in Hato Rey, Puerto Rico, at the earliest possible time for an initial appearance and further judicial proceedings." (Docket No. 11.)  "All inbound inmate movement" ceased temporarily, however, in response to "the ongoing COVID-19 emergency."  (Docket No. 17 at pp. 1—2.) Accordingly, Pimentel remained in Louisiana.[2]

       To avoid further delay, the Court issued an amended writ of *habeas corpus ad prosequendum* on October 27, 2020.  (Docket No. 24).   The amended order required the Warden of the Ouachita Correctional Center in Louisiana ("OCC") to transport Pimentel to the United States District Court for the Western District of Louisiana for his initial hearing.   Id.[3] Law enforcement officers in Louisiana arrested Pimentel on February 25, 2021, nearly eight months after the return of the indictment.   (Docket No. 38.) Pimentel appeared before Magistrate Judge Kayla D. McClusky of the Western District of Louisiana *via* Zoom for his initial appearance. Id., Ex. 2.   On March 16, 2021, the United States informed the

---

[2] On September 2, 2020, Pimentel requested transfer "to this jurisdiction and/or [that] the Initial Appearance and Bail Hearing be scheduled as soon as possible." (Docket No. 13 at p. 1.)  His attorney withdrew this motion, however, because he "learned that brother counsel Francisco Acevedo-Padilla had [already] filed a Notice of Appearance on behalf of [Pimentel]."  (Docket Nos. 14 & 15.)

[3] The record does not indicate when ICE transferred Pimentel from JPCC to OCC.

Court that "defendant Aldo Pimentel Ramírez ha[d] arrived in the jurisdiction and is currently being housed at MDC Guaynabo." (Docket No. 40.)   He entered a plea of not guilty before United States Magistrate Judge Marshal D. Morgan on March 19, 2021. (Docket No. 44.)

Pimentel moves to dismiss the indictment, asserting that the grand jury returned the indictment in violation of the STA. (Docket Nos. 27 & 49.)   The Court disagrees.

## II.  The Speedy Trial Act

Pimentel invokes 18 U.S.C. section 3161(b) ("section 3161(b)") of the Speedy Trial Act.  Id.  This provision provides that:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b).  Congress enacted section 3161(b) to "ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defend himself."  United States v. Spagnuolo, 469 F.3d 39, 43 (1st Cir. 2006) (citation and quotation omitted).  If the United States fails to file an indictment within thirty days of the defendant's arrest or summons,

the "charge against that individual contained in such complaint shall be dismissed or otherwise dropped."  18 U.S.C. § 3161(a)(1).

Law enforcement officers arrested Pimentel 240 days after the return of the indictment.[4]  Generally, section 3161(b) is inapplicable when the indictment precedes the defendant's arrest. See United States v. Mala, 7 F.3d 1058, 1061 (1st Cir. 1993) (holding that the [STA] is not applicable to periods of delay antedating a defendant's arrest"); United States v. Cervantes, 897 F. Supp. 24, 26 (D.P.R. 1995) ("In this case, arrest came after, not before, indictment so the concerns that underlie section 3161(b) are not raised.") (Fusté, J.); United States v. Green, 508 F.3d 196, 202 (5th Cir. 2007) (Because the indictment in this case was filed within thirty days from the date of the defendant's arrest – indeed, it was filed prior to the defendant's arrest – § 3161(b) was not violated."); United States v. Benenhaley, 240 Fed. Appx. 581, at *582 (4th Cir. 2007) ("[B]ecause [the defendant] was indicted before his arrest on the new charges, we find that § 3161(b) was not triggered.").

---

[4] A writ of *habeas corpus ad prosequendum* does not trigger the STA.  United States v. Kelly, 661 F.3d 682, 687 (1st Cir. 2011) ("The question presented here is whether an appearance under a writ of *habeas corpus ad prosequendum* constitutes an "arrest" or "summons" under the STA.  We conclude that it does not.").  Accordingly, the time required to execute the writ of *habeas corpus ad prosequendum* is immaterial to the STA analysis.

The STA is a mechanical statute with rigid deadlines.  It does not, however, grant defendants "the dubious right to be arrested within thirty days of indictment."  <u>Cervantes</u>, 897 F. Supp. at 26.[5]

## A. The Ruse Exception

ICE agents arrested Pimentel on May 14, 2020 in connection with his removal to the Dominican Republic.  (Docket No. 27 at pp. 1—2.)  He argues that this event constitutes an "arrest" within the meaning of the STA.  (Docket No. 27.)  The grand jury returned the indictment 48 days later.  (Docket No. 2.)  According to Pimentel, the return of the indictment exceeds the thirty day threshold.  <u>Id.</u>  He is mistaken.

The STA governs federal criminal actions, not civil or administrative proceedings.  In fact, the statute is unambiguous: The term "offense" refers to "any Federal criminal offense which is in violation of any Act of Congress."  18 U.S.C. § 3172(2). For instance, "an arrest on civil charges by the INS ordinarily does not trigger the STA when criminal charges are filed later." <u>United States v. García-Martínez</u>, 254 F.3d 16, 19 (1st Cir. 2001);

---

[5] "[No] Sixth Amendment right to a speedy trial arises prior to the filing of the criminal charge."  <u>United States v. McCoy</u>, 977 F.2d 706, 712 (1st Cir. 1992).  The First Circuit Court of Appeals has held, however, that the Due Process Clause of the Fifth Amendment "has a limited role to play in protecting against oppressive [pre-indictment] delay."  <u>United States v. DeCologero</u>, 530 F.3d 36, 78 (1st Cir. 2008) (quoting <u>United States v. Lovasco</u>, 431 U.S. 783, 389 (1977)).  Pimentel relies exclusively on the STA.

see Ryan v. United States Immigration& Customs Enf't, 974 F.3d 9, 19 (1st Cir. 2020) (noting that "an ICE officer may arrest a noncitizen pursuant to an administrative warrant and may detain him during the pendency of removal proceedings"). Essentially, "if a defendant is held subject to a lawful civil detention, the time limit to indict the defendant on a criminal offense does not commence to run until the defendant is specifically arrested or charged for that offense; it does not begin to run prior to that date merely because the defendant was previously civilly detained." United States v. Pinto-Román, 337 F. Supp. 2d 781, 784 (E.D. Va. 2004).

Pimentel cites the "ruse" exception to shift the date of arrest from February 25, 2021 to May 14, 2020. Docket No. 27 at p. 1 (quoting García-Martínez, 254 F.3d at 20). The ruse is a cabal between "[ICE] officials and criminal authorities" to "avoid . . . the requirement of the [thirty-day mandate]." García-Martínez, 254 F.3d at 20. Authorities collude to prolong civil detention, circumventing the STA and allowing the criminal investigation to conclude. Id. (quoting United States v. Cepeda-Luna, 989 F.2d 353, 357 (9th Cir. 1993)) (holding that the "Speedy Trial Act can be applied to civil detentions which are mere ruses to detain the defendant for later criminal prosecution"). If civil detention is a mere pretext to preserve the status quo for a

subsequent criminal proceeding, the STA applies retroactively to the date that the civil detention began.  See e.g., United States v. Restrepo, 59 F. Supp. 2d 133, 138 (D. Mass. 1999) (holding that the "defendant was detained by INS to develop the criminal case against him," thus "the 30-day limit of the Speedy Trial Act for indictment following arrest began running on September 28, 1998, the date of the INS arrest").

To prevail, Pimentel must demonstrate "that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution."  United States v. De La Peña-Juárez, 214 F.3d 594, 598 (5th Cir. 2000); see United States v. Tejeda, 255 F.3d 1, 4 (1st Cir. 2001) (holding that the defendant failed to set forth "any evidence that the government deliberately employed delaying tactics for an impermissible purpose," rendering the ruse exception inapposite).  This exception is "not easily triggered." United States v. Pasillas-Castañón, 525 F.3d 994, 998 (10th Cir. 2008)

Pimentel contends that ICE detained him for two-months to "[buy] time for the filing of charges in this case."  (Docket No. 49 at p. 2.)  To substantiate this allegation, Pimentel argues that the United States Department of Homeland Security I-213 Form ("I-213 Form") is incontrovertible evidence of collusion between ICE and the United States Attorney's Office for the District of

Puerto Rico.  <u>Id.</u>  The I-213 Form is Pimentel's "Record of
Deportable/Inadmissible Alien."  (Docket No. 29, Ex. 1.)  ICE
agents updated the I-213 Form on June 16, 2020, a month after his
arrest for removal to the Dominican Republic.  <u>Id.</u>  This update
provided that:

> On November 13, 2019, PIMENTAL RAMÍREZ, Aldo Mauricio
> was apprehended by Customs and Border Protection
> Officers from the Anti-Terrorism and Contraband
> Enforcement Team (AT-CET) while trying to board the
> Flight B6 1037 to Santo Domingo, Dominican Republic.
> During the outbound inspection subject declared that, he
> was transporting only $9,000 USD and filed a 503.
> Subject was referred to secondary for further
> inspection.  At secondary subject did a binding
> declaration and again declared that he was transporting
> only $9,000 USD.  During further inspection of subject's
> personal belongings it was revealed that subject was
> transporting $100,020 USD concealed in his clothes.
> **Systems queries revealed that subject is currently under
> investigation for being linked to a Dominican DTO (Drug
> Trafficking Organization)**.  Subject visa was canceled
> for being an alien in violation of his status or
> condition of entry in violation of sec 237(a)(1)(C)(I)
> of the INA.  An I-247 Detainer for prosecution was
> approved . . . **Subject was turn [*sic*] over to HSI agents
> for prosecution**.

Docket No. 49, Ex. 1 at p. 3 (emphasis added).  According to
Pimentel, this narrative demonstrates that the United States "had
the intention of prosecuting [him] for this case at the inception
of his detention by ICE."  (Docket No. 49 at p. 5.)

The United States presents an alternative interpretation,
placing Pimentel's allegations in context and negating alleged
collusion between law enforcement authorities.  Pimentel excluded

the second page of the I-213 Form.  (Docket No. 51, Ex. 1.)  This page pertains to the November 13, 2019 intervention, that is, the encounter leading to the bulk cash and structuring charges in the 2019 case.  Id.  On November 14, 2019, ICE agents noted that Pimentel failed to declare $100,000, that "Systems queries revealed that the subject is currently under investigation for being linked to a Dominican [DTO]," and that the "subject was turn [*sic*] over to ICE agents."  (Docket No. 51, Ex. 1 at p. 2.) Accordingly, the United States maintains that the passage cited by Pimentel does not, in fact, relate to the prosecution of this action.  (Docket No. 51 at p. 5.)  The DTO investigation and transfer to ICE refer to "the detainer ICE lodged when HSI took custody of the defendant in November of 2019," which culminated in Pimentel's conviction for, *inter alia*, bulk cash smuggling.  Id. As of this date, only the November 2019 detainer existed.  Id. at p. 4.  The detainer to ensure Pimentel's removal pending the conclusion this criminal action issued on July 31, 2020.  (Docket No. 51, Ex. 2.).  The detainers establish that the "prosecution" and the DTO investigation alluded to in the I-213 form is the 2019 case, not this action.

The ruse exception cannot rest on a misinterpretation of the I-213 Form.  Nothing in the record suggests that ICE agents detained Pimentel to provide the United States Attorney's Office

Criminal No. 20-206 (FAB)                                          11

with additional time to investigate the DTO allegations.  See
United States v. Saucedo, 956 F.3d 549, 554 (8th Cir. 2020)
(affirming the denial of the defendant's motion to dismiss because
he failed to "[show] that his detention by ICE was for the primary
or exclusive purpose of furthering his ultimate prosecution").
ICE agents detained Pimentel pursuant to legitimate removal
proceedings.  See Pasillas-Castañón, 525 F.3d at 998 ("In short,
if the detaining authorities have a lawful basis for their civil
detention, a defendant is not entitled to invoke the [ruse]
exception.").  Consequently, the motion to dismiss is **DENIED**.
(Docket Nos. 36 & 39.)

### III. Conclusion

For the reasons set forth above, Pimentel's motion to dismiss
the indictment is **DENIED**.  (Docket Nos. 27 & 49.)


**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 1, 2021.


                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE